





NOV 22 2022

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**XXXXX**

[UNDER SEAL],

Plaintiff(s),

vs.

[UNDER SEAL],

Defendant(s).

Case No. ____________

**COMPLAINT;**
**DEMAND FOR JURY TRIAL**

**FILED *IN CAMERA* & UNDER SEAL**
**PURSUANT TO 31 U.S.C. § 3730**

**NOT FOR PUBLIC DISCLOSURE**
**DO NOT PLACE IN PRESS BOX**
**DO NOT ENTER ON PACER**

1: 22 CV 0 0 1 5 1 5 JLT BAM



ORIGINAL

John K. Landay (Cal Bar No. 257573)
LANDAY ROBERTS LLP
600 W. Broadway, Suite 700
San Diego, CA 92101
Phone: 619.230.5712 jlanday@landayroberts.com

Oscar M. Price, IV (*pro hac vice forthcoming*)
PRICE ARMSTRONG LLC
1919 Cahaba Road
Birmingham, AL 35223
Phone: 205.706.7517 oscar@pricearmstrong.com

*Attorneys for Relator*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* SARA HILL,<br><br>Plaintiff/Relator,<br><br>v.<br><br>MagniX USA Corporation, Inc.<br>Defendants. | Case No. ______________<br><br>**COMPLAINT; DEMAND FOR JURY TRIAL**<br><br>**FILED *IN CAMERA* & UNDER SEAL PURSUANT TO 31 U.S.C. § 3730**<br><br>**NOT FOR PUBLIC DISCLOSURE**<br>**DO NOT PLACE IN PRESS BOX**<br>**DO NOT ENTER ON PACER** |

## ***QUI TAM* COMPLAINT**

Relator Sara Hill, on behalf of herself and the United States of America, alleges and claims against Defendant MagniX USA Corporation, Inc. as follows:

## **INTRODUCTION**

1. Defendant MagniX USA Corporation, Inc. ("MagniX") is a developer, and researcher of electric propulsion systems for commercial aircraft. In September, 2021, the National Aeronautics and Space Administration ("NASA") awarded

MagniX a $74.3 million contract to perform integrated megawatt-class powertrain system ground and flight demonstrations.

2. Since the very beginning of its contractual relationship with NASA, MagniX has misappropriated NASA funds that the NASA contract required be used exclusively for ground and flight demonstrations. Rather than use the funds in accordance with the NASA contract, MagniX has instead used NASA funds for improper bonuses, pay increases, and to fund MagniX's scheme to coverup the fact that critical members of its team, including MagniX Chief Executive Office Nuno Taborda, are not legally authorized to work in the United States. This scheme includes using the NASA funds to pay immigration lawyers, travel expenses for non-citizen employees to commute to and from the home country, and paying employees who are not authorized to work in the United States as independent contractors, even though otherwise legally should be considered full-time employees.

3. Defendant's conduct violates the relevant contract with NASA, the Statement of Objectives, the Statement of Work, N.P.R. 1600.4A § 4.1.3, F.A.R. §§ 22.1802(a) and (b), and F.A.R. § 22.102-1.

4. The Defendants are aware that what they are doing is fraud, but they persist in their unlawful scheme to intentionally defraud NASA. This action is therefore necessary to stop this fraud.

## JURISDICTION AND VENUE

5. This action arises under the False Claims Act, 31 U.S.C. §§ 3729-33 (the "False Claims Act"). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331. Jurisdiction is also authorized under 31 U.S.C. § 3732(a).

6. Venue lies in this judicial district pursuant to 31 U.S.C. § 3732(a) because Defendant qualifies to do business in California, transacts business in California, and the division of the NASA that issued the contract in question is located in this venue. transacts substantial business in this judicial district, and can be found

here. Additionally, and as described herein, Defendant committed within this judicial district acts proscribed by 31 U.S.C. § 3729. Specifically, Defendant submitted and caused to be submitted within this judicial district false claims to NASA, with the fraudulent use of patient codes as outlined herein.

## PARTIES

7. Relator Sara Elizabeth Hill began working at MagniX on May 23, 2022 as Head of People Operations. Ms. Hill later became Vice President of Human Resources. From July until she left MagniX on September 13, 2022, Ms. Hill reported directly to CEO Nuno Taborda. Ms. Hill had responsibility for directing the human resources department, including the development of human resources policies, ensuring compliance with employment laws, and implementation of hiring and talent strategies at MagniX.

8. MagniX is a closely held company and government contractor incorporated in Delaware with its headquarters in Everett, Washington. MagniX does business in this jurisdiction and the contract pursuant to which the fraud was perpetuated emanated from NASA's offices in this jurisdiction. At all times relevant to the accusations in this Complaint, MagniX was wholly owned by the Clermont Group, a business conglomerate out of Singapore run by Robert Chandler.

9. The National Aeronautics and Space Administration independent agency of the United States federal government responsible for the civil space program, aeronautics research, and space research. NASA has locations across the United States, including one in this jurisdiction.

## DISCLOSURE

10. Prior to filing this Complaint, Relator voluntarily disclosed to the United States the information upon which this action is based. To the extent that any public disclosure has taken place as defined by 31 U.S.C. §3739(e)(4)(A), Relator is the original source of the information for purposes of that section. Alternatively, Relator

has knowledge that is independent of and materially adds to any purported publicly disclosed allegations or transactions, and Relator voluntarily provided that information to the Government before filing this Complaint. Relator is serving contemporaneously herewith a statement of the material evidence in their possession upon which their claims are based.

## FACTUAL BACKGROUND

### Electric Aircraft Propulsion Technologies

11. Electric Aircraft Propulsion ("EAP") is widely viewed by aero-space experts as the future of commercial air travel in the United States and around the world.

12. EAP technologies offer innovative solutions to making flight more sustainable – including lighter and more efficient motors, electronics, and materials that can help reduce emission levels and improve fuel efficiency.

13. EAP is expected to result in quieter, safer, and longer-range aircraft while offering cleaner air and cheaper airfare.

14. NASA has already conducted conceptual aircraft design studies to estimate fuel and emissions reductions and to determine the technological requirements of aircraft powered by EAP.

### The NASA's Electric Powertrain Flight Demonstration Project

15. The NASA Electric Powertrain Flight Demonstration ("EPFD") project conducts ground and flight tests of EAP technologies to assist the development of new electric-powered aircraft.

16. NASA runs its EPFD project through NASA's Armstrong Flight Research Center in Edwards, California.

17. Through the EPFD project, NASA's goal is to introduce EAP technologies to U.S. aviation fleets no later than 2035, supporting short-range and regional commercial air travel, as well as single-aisle seat transports.

18. To achieve this goal, NASA contracts with private sector companies to perform integrated megawatt-class powertrain system ground and flight demonstrations to validate their concepts, and to project benefits for future EAP aircraft configurations. The important goal of the demonstrations that the NASA contracts and pays this government contractors to achieve is to identify and retire technical barriers and integration risks and to inform the development of standards and regulations for future EAP systems.

**NASA's Contract with MagniX**

19. On January 25, 2021, the NASA Armstrong Flight Center issued a Statement of Objectives ("SOO") for new private sector contracts for flight demonstrations of MW-Class Powertrain Systems for Commercial Transports.

20. The SOO broadly described the objectives of those contracts as follows:

> NASA is investigating the utilization of flight demonstrations to rapidly mature and transition integrated EAP technologies and associated EAP-based vision systems for introduction into the US fleet no later than 2035. At the Agency level, this effort supports research that has high potential to catalyze economic growth. At the Aeronautics Mission Directorate level, this effort supports research to realize revolutionary improvements in economics and environmental performance for subsonic transports with opportunities to transition to alternative propulsion and energy.
>
> To support Agency stated goals, this effort is being formulated by ARMD to directly support the following stated ARMD Critical Commitment:
>
> > Demonstrate practical vehicle-level integration of MW-class Electrified Aircraft Propulsion (EAP) systems, leveraging advanced airframe systems to reinvigorate the regional and emerging smaller (thin haul) aircraft markets and strengthen the single-aisle aircraft market.
>
> To this end, commercial subsonic transport vision system developments are under study by NASA and Industry that may meet or exceed Subsonic Transport (Vision) System Level Metrics shown in Table 1, taken directly from the NASA Aeronautics Mission Directorate SIP (2019). Research activities across a range of technology readiness levels

> (TRL) are underway at NASA to meet this commitment. This particular effort, the flight demonstration of integrated MW-class powertrain system developments, is focused on enabling vision systems to directly support achievement of the Aircraft Fuel/Energy Consumption Mid-Term Goal. Data acquired in this effort will be used to validate the benefits of integrated MW-class powertrain system technology through ongoing vision system studies conducted by NASA and Industry, and results and progress will be communicated to stakeholders on a regular basis.

21. To that end, the SOO specially describes five goals and objectives for any contractor with whom NASA contracts for this project:

> Goal 1 - Collaborate with US Industry and other NASA projects on EAP development, flight testing, flight test instrumentation, and range support.
>
> Objective - Develop partnership agreements, including contractual arrangements with US Industry for EAP technology development and flight testing to enable rapid technology transition to the US fleet.
>
> Goal 2 - Conduct necessary ground demonstrations of integrated electrified aircraft propulsions systems with US Industry to support flight test
>
> Objective - Conduct technology maturation and risk reduction ground testing of integrated MW-class powertrain system components and system to support flight testing.
>
> Goal 3 - Conduct flight testing of a crewed aircraft with an electrified aircraft propulsion powertrain system with US Industry.
>
> Objective - Flight demonstrate technologies for practical vehicle level integration of high-power electrified aircraft propulsion system maturation.
>
> Goal 4 - If possible, within specified timeframe and budget, allow for spiral developments of EAP technology.
>
> Objective - If possible, within specified timeframe and budget, provide a flexible system architecture to demonstrate additional emerging

> technology with flight test insertions.
>
> Goal 5 - Will plan ground and flight test campaigns to provide appropriate data to establish standards to address gaps in certification requirements.
>
> Objective - Collaborate with NASA personnel and US Industry to identify and address regulation and standards gaps through ground and/or flight testing.

22. To achieve these goals and objectives, NASA clearly articulated the contract objectives:

> Plan, manage, and conduct appropriate ground tests and flight tests of an integrated MW-class Powertrain System that enables the offeror's vision system, that meets described needs, goals and objectives shown above, and that is in alignment with system and data requirements defined in the System Requirements Document (SRD) and Data Requirements Document (DRD)....
>
> Technical progress will be continuously monitored and measured consistent with the technical performance measures...and progress will be regularly reported to stakeholders throughout the project lifecycle. It is expected that the TPMs will be used to translate integrated MW-class powertrain system benefits to vision system performance in terms of Subsonic System Level metrics....
>
> The products of this effort are data and data-related intellectual property. The required test data and management of data-related intellectual property are described in the Data and Intellectual Property Management Plan....

23. Importantly, the SOO specifically enumerates management requirements for any contractor:

> Utilize an integrated, proactive risk-based technical management approach to ensure that attention is focused on technical work that increases technical readiness level while meeting technical perfo1mance measures.

> Provide probabilistic, risk-infused cost and schedule estimates for all of the technical work. Provide updates at life-cycle reviews.
>
> Manage all activities performed under the contractor 's Statement of Work (SOW).

24. Pursuant to this SOO, NASA offered for competitive bid contracts to assist NASA in accelerating the introduction of megawatt class EAP systems into future aircraft products by U.S. industry, to help identify certification gaps, and to address those gaps through ground tests and flight tests.

25. On September 30, 2021, NASA announced that MagniX had been awarded a $74.3 million hybrid fixed-price/cost-share contract to perform the flight demonstrations described in the SOW and the related contract.

26. Pursuant to that contract, MagniX was to use the funds provided by NASA exclusively to perform integrated megawatt-class powertrain system ground and flight demonstrations.

27. MagniX purportedly began work pursuant to the contract in September 2021.

28. MagniX submitted its first claim for payment under the operative contract on September 30, 2021, and has continued to submit claims for payment ever since.

29. To date, MagniX has submitted claims for payment to the federal government of $21,772,579.

30. All of those claims have been paid in full.

**MagniX's Defrauding of The Federal Government**

31. Contrary to the requirements of MagniX's contract with NASA, important federal laws and regulations, and MagniX's explicit and implicit representations to NASA, MagniX has not use these funds as required, but has instead engaged in a complex, deliberate scheme to defraud NASA and misappropriate the

proceeds of MagniX's contract with NASA.

32. First, rather than use these funds for their intended purpose, when MagniX received its very first funds under its contract with NASA, MagniX distributed the first NASA funds to its officers and employees in the form of bonuses totaling approximately $1,000,000. The decision to distribute these funds as bonuses was made by then Chief Executive Officer Roei Ganzarski with the blessing of Robert F. Chandler, the principal owner of MagniX through his company The Clermont Group.

33. Second, early in 2022, just a matter of months after the first NASA funds were received, MagniX issued raises of up to $50,000 to many of its employees, most of which resulted in those employees being paid significantly more than the expected or prevailing salaries for employees with those credentials, in those fields, and in the geographic area in which they work.

34. Third, and perhaps most significantly, MagniX has been using NASA money to help sustain its scheme to avoid United States immigration and employment regulations and laws.

35. MagniX's current Chief Executive Officer, Nuno Taborda, is a Portuguese citizen who is not legally authorized to work in the Unites States. Specifically, each time Taborda enters the United States he does so under the Visa Waiver Program, which only permits him to travel to the United States for business in 90-day increments and does not permit him to permanently work in the United States as an employee of any United States company. Because MagniX therefore cannot legally pay Taborda as an employee, MagniX circumvents United States immigration laws by funding a Canadian corporation that then transfers money to a German entity that deposits Taborda's "salary" into his German bank account. Upon information and belief, funds provided by NASA are a significant portion of Taborda's salary.

36. In addition to Taborda, many other MagniX employees and officers are also not legally permitted to be employed by United States companies. Many of these employees reside in the country of their citizenry, and only travel to the United States occasionally and as immigration laws allow. Consistent with its scheme to circumvent United States immigration laws, MagniX pays these full-time employees as independent contracts, thereby violating United States tax and employment laws.

37. Perhaps most troubling, MagniX is paying significant money to immigration attorneys in an attempt to remedy its immigration problems before they are uncovered by the United States government. MagniX is also devoting significant resources for the travel expenses of foreign nationals who are not legally permitted to work for MagniX to travel from their home country to the United States. Upon information and belief, much of this money comes from funds provided by NASA pursuant to the relevant contract.

38. Finally, MagniX is in violation of its contract with NASA in other significant ways. MagniX's management procedures are not compliant with the contract, the SOO, and the Statement of Work. MagniX has not complied with its reporting requirements under the contract and the SOO and the Statement of Work as to do so accurately would likely have revealed the fraud to NASA.

**MagniX's Retaliation Against Relator Hill**

39. Relator began to discover the above-described fraudulent scheme as soon as she assumed her position at MagniX.

40. From the very beginning, Relator raised concerns about the irregular employment arrangements, the misuse of the NASA funds, and the means of payment to non-citizens.

41. Relator Hill raised these concerns with leadership at MagniX, including with Taborda.

42. Relator also raised some of these concerns directly with the Clermont

Group, which at the time was the sole owner of MagniX.

43. Rather than addressing Relator's concerns, MagniX instead elected to terminate her employment with MagniX in retaliation for her attempts to eliminate fraud at MagniX.

44. Relator was informed of her termination on the morning of September 13, 2022, and was officially terminated later that day.

## THE UNITED STATES FALSE CLAIMS ACT

45. The False Claims Act provides, in pertinent part, that a person is liable to the United States who: knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay money to the government; knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay money or property to the government; or conspires to commit any of the above violations. 31 U.S.C. § 3729(a)(1).

46. Liable parties must pay the government for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461; Public Law 104-410), plus three times the amount of damages which the Government sustains. *Id.* § 3729(a)(1)(G).

47. The term "claim" means any request or demand for money or property that: (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government provides or has provided any portion of the money or property requested or demanded; or will reimburse such contractor, grantee, or other recipient for any portion of the money that is requested or granted.

*Id.* § § 3729(b)(2).

48. The term "obligation" includes the retention of any overpayment. *Id.* § 3729 (b)(3).

49. "Knowing" and "knowingly" "(A) mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud[.]" *Id.* § 3729(b)(1).

50. The statute of limitations is 6 years after the date on which the violation of section 3729 is committed, or more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last. *Id.* § 3731(b).

**OTHER RELEVANT FEDERAL REGULATIONS**

51. Pursuant to N.P.R. 1600.4A § 4.1.3, MagniX, as a NASA contractor, MagniX is required to comply with all NASA regulations regarding the granting of access to foreign nations "to NASA…IT resources for any purpose other than an appropriately authorized tour of facilities that is, or would normally be, conducted for the general public."

52. Pursuant to F.A.R. §22.1802(a), MagniX, as a government contractor is required to abide by all United States immigration laws and to employ in the United States only individuals who are eligible to work in the United States. Further, pursuant F.A.R. §22.1802(b), MagniX, as a government contractor, is required to use the Federal E-Verify program. It has done neither.

53. Pursuant to F.A.R. § 22.102-1, MagniX is required to comply with all United States labor and employment laws. It has not done so.

## COUNT ONE

## PRESENTING OR CAUSING TO BE PRESENTED FALSE CLAIMS UNDER 31 U.S.C. § 3729

54. Relator adopts and incorporates the previous paragraphs as though fully set forth herein.

55. By and through the fraudulent schemes described herein, Defendant knowingly – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information – presented or caused to be presented false or fraudulent claims to the United States for payment or approval.

56. The United States paid the false claims described herein.

57. Defendant's fraudulent actions, as described *supra*, are part of a widespread, systematic pattern and practice of knowingly submitting or causing to be submitted false claims to the United States through fraudulent use of money provided to Defendant pursuant to its contract with NASA.

58. Defendant's fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed to Defendant pursuant to its contract with NASA.

WHEREFORE, Relator demands judgment in their favor on behalf of the United States, and against Defendant, in an amount equal to treble the damages sustained by reason of Defendant's conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Relator may be entitled.

///

///

///

///

**COUNT TWO**

**MAKING OR USING FALSE STATEMENTS OR RECORDS MATERIAL TO A FALSE CLAIM UNDER 31 U.S.C. § 3729**

59. Relator adopts and incorporates the factual allegations contained in the previous paragraphs as though fully set forth herein.

60. By and through the fraudulent schemes described herein, Defendants knowingly – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information – made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim or to get a false or fraudulent claim paid or approved by the United States in that Defendant fraudulently submitted claims for payment to the United States knowing that it was not in compliance with material immigration regulations and that it intended to misappropriate those funds upon receipt thereof, all in violation of 42 U.S.C. §1395y and the immigration regulations cited *supra*.

61. The false records or statements described herein were material to the false claims submitted, or caused to be submitted, by Defendant to the United States.

62. In reliance upon Defendant's false statements and records, the United States paid false claims that it would not have paid if not for those false statements and records.

63. Defendant's fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed to Defendants and others by the United States for such false or fraudulent claims.

WHEREFORE, Relator demands judgment in their favor on behalf of the United States, and against Defendant, in an amount equal to treble the damages sustained by reason of Defendant's conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further

relief to which Relators may be entitled.

**COUNT THREE**

**"REVERSE FALSE CLAIMS" UNDER 31 U.S.C. § 3729(a)(1)(G)**

64. Relator adopts and incorporates the factual allegations contained in the previous paragraphs as though fully set forth herein.

65. By and through the fraudulent schemes described herein, Defendant knowingly – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information – made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the United States.

66. Defendants knew that used NASA funds intended for Defendant to use to perform integrated megawatt-class powertrain system ground and flight demonstrations for other purposes, yet Defendant took no action to satisfy its obligations to the United States to repay or refund those payments and instead retained the funds and continued to bill the United States.

67. As a result of Defendant's fraudulent conduct, the United States has suffered damage in the amount of funds that belong to the United States but are improperly retained by Defendants.

WHEREFORE, Relator demands judgment in their favor on behalf of the United States, and against Defendant, in an amount equal to treble the damages sustained by reason of Defendant's conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees and costs, and such other, different, or further relief to which Relators may be entitled.

///

///

**COUNT FOUR**

**CONSPIRACY UNDER 31 U.S.C. § 3729(a)(3)**

68. Relator adopts and incorporates the factual allegations contained in the previous paragraphs as though fully set forth herein.

69. Defendant knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment.

70. The false claims were paid.

71. Defendant, in concert with its principals, agents, employees, subsidiaries, and other institutions did agree to submit such false claims to the United States.

72. Defendant and its principals, agents, and employees acted, by and through the conduct described *supra*, with the intent to defraud the United States by submitting false claims for payment.

73. Defendant's fraudulent actions, together with the fraudulent actions of its principals, agents and employees, have resulted in damage to the United States equal to the amount paid by the United States to Defendants and others because of Defendant's fraudulent claims.

WHEREFORE, Relator demands judgment in their favor on behalf of the United States and against Defendants, in an amount equal to treble the damages sustained by reason of Defendants' conduct, together with civil penalties as permitted by 31 U.S.C. § 3729, attorneys' fees, costs, interest, and such other, different, or further relief to which Relators may be entitled.

**COUNTR FIVE**

**RELIEF FROM RETALIATION UNDER 31 U.S.C. § 3730(h)**

74. Relator adopts and incorporates the factual allegations contained in the previous paragraphs as though fully set forth herein.

75. Relator was discharged, threatened, harassed, and otherwise discriminated against in the terms and conditions of her employment because of lawful acts done by Relator in an effort stop the violations of the False Claims Act described above.

WHEREFORE, Relator demands two times the amount of back pay, interest on back pay, and compensation for other special damages she sustained as a result of this discrimination, including litigation costs and reasonable attorneys' fees.

Dated: November 21, 2022

*/s/ John K. Landay*

Oscar M. Price, IV (*pro hac vice forthcoming*)
(oscar@pricearmstrong.com)
PRICE ARMSTRONG, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35203
(205) 208-9588

John K. Landay (Cal Bar No. 257573)
LANDAY ROBERTS LLP
600 W. Broadway, Suite 700
San Diego, CA 92101
Phone: 619.230.5712
jlanday@landayroberts.com

***Attorneys for Plaintiff / Relator***

## DEMAND FOR JURY TRIAL

Plaintiff/Relator hereby demands a jury trial.

Dated: November 21, 2022

/s/ John K. Landay

Oscar M. Price, IV (*pro hac vice forthcoming*)
(oscar@pricearmstrong.com)
PRICE ARMSTRONG, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35203
(205) 208-9588

John K. Landay (Cal Bar No. 257573)
LANDAY ROBERTS LLP
600 W. Broadway, Suite 700
San Diego, CA 92101
Phone: 619.230.5712
jlanday@landayroberts.com

***Attorneys for Plaintiff / Relator***